UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**SHIRLEY BENNETT**                                                     **CIVIL ACTION**

**VERSUS**                                                                     **NO. 14-217-SS**

**CONSOLIDATED GRAVITY DRAINAGE**
**DISTRICT NO. 1**

### ORDER

PLAINTIFF'S MOTION FOR LEAVE TO AMEND (Rec. doc. 15)[1]

**DENIED**

DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Rec. doc. 12)

**GRANTED**

### PROCEDURAL BACKGROUND

On January 28, 2014, Shirley Bennett ("Bennett"), an African-American, filed a complaint against Consolidated Gravity Drainage District No. 1 ("Consolidated") under Title VII for employment discrimination. Rec. doc. 1. Consolidated answered the complaint. Rec. doc. 5. The parties consented to proceed before the assigned Magistrate Judge. Rec. doc. 7. The trial is set for July 20, 2015 with a jury. Rec. doc. 9. On April 20, 2015, Consolidated filed a motion for summary judgment. Rec. doc. 12. Bennett filed an opposition which includes a request for leave to amend her complaint. Rec. doc. 15. Consolidated filed a reply which includes a response to Bennett's request for leave to amend. Rec. doc. 16.

### RULE 15(b) REQUEST FOR LEAVE TO AMEND

In her opposition, Bennett contends that she must be granted leave to amend her complaint under Fed. R. Civ. P. 15(b)(2) to allege claims pursuant to Cleveland Board of

---

[1] The response of the plaintiff, Shirley Bennett ("Bennett"), to the motion of the defendant, Consolidated Gravity District No. 1 ("Consolidated"), seeks leave to amend her complaint. Rec. doc. 15. Bennett's opposition is also treated as a motion for leave to amend. For the reasons stated herein, it is denied.

Education v. Loudermill, 470 U.S. 532, 105 S.Ct. 1487 (1985), and the Louisiana Whistleblower Law, La. R.S. §23:967.  Bennett argues that:  (1) evidence is presented by Consolidated in its motion for summary judgment for the first time; (2) this evidence is totally inconsistent with its explanation to the EEOC; and (3) the evidence is an admission of *per se* violations of Loudermill and the Whistleblower law.  Rec. doc. 15 at 6-7.

Consolidated replies that:  (1) it did not impliedly consent to new claims; and (2) the amendment sought by Bennett is futile because:  (a) the Loudermill and Whistleblower claims are time-barred; (b) Bennett has no property interest in her job as required by Loudermill; and (c) Bennett cannot demonstrate an actual violation of law as required by the Whistleblower law.

"Generally speaking, motions to amend under Rule 15(b) are made at trial or in the immediate aftermath of a trial."  Baicker-McKee, Janssen and Corr, Federal Civil Rules Handbook Rule 15(b) at 544 (2011).  If Bennett seeks leave to amend, she must do so under Rule 15(a).  If Bennett proceeds with a motion under Rule 15(a), she must demonstrate good cause to modify the scheduling order.  In S&W Enterprises, L.L.C. v. Southtrust Bank of Alabama, NA, 315 F.3d 533 (5th Cir. 2003), the Fifth Circuit held that Fed. R. Civ. P. 16(b) governs the amendment of pleadings after a deadline in a scheduling order has expired.

> Only upon the movant's demonstration of good cause to modify the scheduling order will the more liberal standard of Rule 15(a) apply to the district court's decision to grant or deny leave.

Id. at 536.  The Fifth Circuit applied a four-part test to determine whether the district court's refusal to modify its scheduling order was an abuse of discretion: (1) the explanation for the failure to move timely for leave to amend; (2) the importance of the amendment; (3) potential prejudice in allowing the amendment; and (4) the availability of a continuance to cure such prejudice.  Id. at 536.

The deadline for amendment of pleadings was October 6, 2014. Rec. doc. 9. In support of its motion for summary judgment, Consolidated presented the deposition of Bennett and declarations from Clyde Martin, Nancy Galofaro and Carlo Bruno. Rec. doc. 12. Bennett did not depose these persons. There is no evidence that Bennett sought any other discovery from Consolidated except for the interview of Lionel Wells, a member of the Personnel Committee of the Board of Commissioners of Consolidated, who voted against terminating Bennett. Consolidated submitted a declaration from Wells with its reply. If Martin, Galofaro and Bruno had been deposed, Bennett would have learned of their testimony at any earlier stage in the proceeding and sought leave to amend. Bennett cannot demonstrate good cause to modify the scheduling order.

Assuming *arguendo* that Bennett has demonstrated good cause to modify the scheduling order, the standard under Rule 15(a) would be applicable. Futility of the amendment is grounds for denial of a Rule 15(a) motion. Jacobsen v. Osborne, 133 F.3d 315, 318 (5th Cir. 1998). A Loudermill claim requires a pre-termination opportunity to respond. Such a claim is subject to a one year statute of limitation. Jones v. Orleans Parish School Board, 688 F.2d 343, 344 (5th Cir. 1982). A Louisiana Whistleblower claim is also subject to a one year statute of limitation. Johnson v. Harrah's Entertainment, Inc., 2005 WL 3541139, *5-6 (E.D.La.) (Knowles, M.J.). Bennett was terminated on July 11, 2012. She did not file her complaint until January 28, 2014. Rec. doc. 1. Bennett's Loudermill and Louisiana Whistleblower claims are time-barred. Her proposed amendment is futile.

Bennet's Rule 15(b) request for leave to amend is denied.

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 provides in pertinent part that summary judgment will be granted when "... the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552 (1986). Lujan v. National Wildlife Federation, 497 U.S. 871, 889, 110 S.Ct. 3177, 3189 (1990). To that end, the court must "view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." Wyatt v. Hunt Plywood, 297 F.3d 405, 409 (5th Cir. 2002). Where the record taken as whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. Matsushita Electric Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986); Washington v. Allstate Ins. Co., 901 F.2d 1281 (5th Cir. 1990).

Furthermore, the party moving for summary judgment must "demonstrate the absence of a genuine issue of material fact," but need not negate the elements of the nonmovant's case. Celotex, 106 S.Ct. at 2553; see Lujan, 110 S. Ct. at 3187. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response. If the movant does, however, meet this burden, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. Celotex, 106 S.Ct. at 2553-54. A dispute over a material fact is genuine, if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Kee v. City of Rowlett Texas, 247 F.3d 206, 210 (5th Cir. 2001).

This burden is not satisfied with "some metaphysical doubt as to the material facts," Matsushita, 106 S.Ct. at 1356, by "conclusory allegations," Lujan, 110 S. Ct. at 3180, or by only

a "scintilla" of evidence, Davis v. Chevron U.S.A., Inc., 14 F.3d 1082 (5th Cir.1994). The court resolves factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. The court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. See Lujan, 110 S. Ct. at 3188. Summary judgment is appropriate in any case "where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." Armstrong v. City of Dallas, 997 F.2d 62 (5th Cir.1993). If the nonmoving party fails to meet this burden, the motion for summary judgment must be granted. Evans v. City of Bishop, 238 F.3d 586, 588-89 (5th Cir. 2000).

In Fierros v. Texas Dept. of Health, 274 F.3d 187 (5th Cir. 2001), the Fifth Circuit cautioned that summary judgment is not favored in claims of employment discrimination and that the Supreme Court in Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150, 120 S.Ct. 2097, 2110 (2000), emphasized the paramount role that juries play in Title VII cases, stressing that in evaluating summary judgment evidence, courts must refrain from the making of credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts, which are jury functions, not those of a judge. Fierros, 274 F.3d at 190-91.

## TIME-BARRED ALLEGATIONS

Bennett filed an EEOC complaint on May 2, 2013. Consolidated urges that incidents alleged to have occurred more than 300 days earlier or prior to July 6, 2012 are time-barred. Louisiana is a deferral state. Any Title VII discrimination claim that is not filed within 300 days of occurrence is dismissed as untimely absent a demonstration of a continuing violation. Kimble v. Georgia Pacific Corporation, 245 F.Supp.2d 862, 870 (M.D.La. 2002) (citing 42 U.S.C. § 2000e-5(e)(1), and Celestine v. Pertoleos de Venezuella, SA, 266 F.3d 343, 351 (5th Cir. 2001)).

Bennett's complaint alleges that she "was constantly subjected to discrimination and harassment because of race." Rec. doc. 1 at 3. It is assumed she contends that Consolidated's conduct was continuing.

In Kimble, plaintiff's sex discrimination claim arose from seven events. The court determined that some of the events were time-barred. Plaintiff argued that there was a continuing violation.

> Plaintiff filed internal complaints with Defendant Corporation contemporaneously with these two events. She did not, however, file a charge with the EEOC or complain to the Louisiana Commission on Human Rights. Thus, it cannot be said that Plaintiff was unaware of her rights or that the effects of a persistent persisting and continuing system of discriminatory practices in promotion or transfer produced effects that were not manifested as individually discriminatory except in cumulation over time.

245 F.Supp.2d at 872 (citations and quotation marks omitted).

Bennett did more than make internal complaints about alleged discriminatory treatment. On April 27, 2006, she filed an EEOC charge claiming racial discrimination and harassment, because she did not receive a promotion and a raise and was subjected to retaliation because of complaints of discrimination made to Consolidated's board. Rec. doc. 12 (Exhibit A – Deposition of Shirley Bennett [Exhibit 26 to Bennett Deposition]). Bennett cannot argue that she was unaware of her rights or that the practices at issue were not manifest as individually discriminatory practices.

Bennett's opposition to the motion for summary judgment contains no response to Consolidated's argument that allegations of incidents occurring prior to July 6, 2012 are time-barred. The motion for summary judgment is granted as to the following pre-July 6, 2012 incidents:

1. February 2003 – hiring Nancy Galofaro, a white female, for position of Secretary-Treasurer instead of filling it with Bennett was discriminatory (Paras. 9 and 10 of Rec. doc. 1).

2. 2009-2010 - when illness caused Bennett to wear a wig, a Consolidated employee, Greg Rodriguez, tried to pull it off her head and commented after her hair grew back (Paras. 15-17 of Rec. doc. 1).

3. November 2008 – Rodriguez used a newspaper photograph of President-elect Obama to make a racially insensitive cartoon (Para. 18 of Rec. doc. 1).

4. On or before March 21, 2005 – Rodriguez and David Fairburn regularly addressed Nathaniel "Hoppy" Wilson, an African-American employee, who died on March 21, 2005, as "Buckwheat" (Para. 19 of Rec. doc. 1).

## *PRIMA FACIE* CASE OF RETALIATION

Bennett alleges that on July 10, 2012, she complained to the Personnel Committee about retaliation. She alleges that Consolidated violated Title VII by retaliating against her for having filed the charge of discrimination on April 27, 2006 and for having complained of harassment and unfair treatment because of race. Rec. doc. 1 (Paras. 38 and 48).

A plaintiff may establish a *prima facie* case of retaliation by showing that: (1) she engaged in an activity protected by Title VII; (2) she was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action. Stewart v. Mississippi Transportation Commission, 586 F.3d 321, 331 (5th Cir. 2009).

Consolidated urges that Bennett cannot establish the third element. It cites the factors described by the Fifth Circuit in Nowlin v. Resolution Trust Corp., 33 F.3d 498, 508 (5th Cir.

1994).  It contends that these factors do not demonstrate the causal link between the 2006 EEOC charge and Bennett's termination in 2012.[2]

Bennett's memorandum does not contain any opposition to Consolidated's contention that Bennett cannot present a *prima facie* case of retaliation.  For the reasons presented by Consolidated, its motion for summary judgment is granted as to Bennett's retaliation claim.

## DISCRIMINATION

A.  *Prima Facie* Case of Discrimination.

The parties agree on the elements required for a *prima facie* case of discrimination.  Bennett must demonstrate that:  (1) she is a member of a protected class; (2) she was subjected to an adverse employment action; (3) she was qualified for her position; and (4) she was replaced by someone outside the protected class.  Rec. doc. 12 (Memorandum at 19) and Rec. doc. 15 at 4.  Consolidated concedes that Bennett satisfies the first three elements.  Rec. doc. 12 (Memorandum at 20).

It urges that Bennett was not replaced by someone outside the protected class.  At the time of her termination, Bennett was employed as general office clerk and Paula Dietz, a white female, was the receptionist/timekeeper.

After Bennett was terminated, Dietz was promoted to Bennett's position of general office clerk.  An African-American female was hired to replace Dietz as receptionist/timekeeper.  Consolidated argues that because an African-American female was hired to fill the

---

[2]  Consolidated states:

> There is no close temporal relationship between Bennett's 2006 EEOC charge and her 2012 termination. Bennett has a disciplinary record and a documented pattern of work problems and policy violations. Finally, there was nothing unusual about her termination. The BOC simply reached the end of its rope with Bennett and termination was the only sensible option.

Rec. doc. 12 (Memorandum at 21).

receptionist/timekeeper position, Bennett was not replaced by someone outside the protected class. Rec. doc. 12 (Memorandum at 20).

Consolidated's argument is without merit. Bennett was replaced in the position of general office clerk by Dietz, a white female. Bennett satisfies the requirements for a *prima facie* case of discrimination.

   B.  <u>Nondiscriminatory Reason for Termination</u>.

> If a plaintiff is successful in establishing a *prima facie* case of discrimination, the employer must rebut a presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action.

Turner v. Baylor Richardson Medical Center, 476 F.3d 337, 345 (5th Cir. 2007). On July 11, 2012, the Personnel Committee terminated Bennett because:

1. Bennett had a documented history of tardiness, excessive personal telephone calls, excessive personal visitors, and lack of initiative.

2. Bennett manufactured the March 26, 2012 hand sanitizer incident and was disrupting the work place with her behavior.

3. Bennett misled the Personnel Committee into believing that the purpose of the July 11, 2012 meeting with her was to discuss her 2012 evaluation and pay raise. Instead, she focused the meeting almost entirely on the March 26, 2012 hand sanitizer incident.

Rec. doc. 12 (Exhibit D - Declaration of Carlo S. Bruno). The decision to terminate Bennett was made by the Personnel Committee. It was not made by any of the supervisors or co-employees. Consolidated articulates legitimate nondiscriminatory reasons for the adverse employment action.

C. Pretext for Discrimination.

> If the employer meets its burden, then it shifts back to the plaintiff to present substantial evidence that the employer's reason was pretext for discrimination. If the plaintiff can show that the proffered explanation is merely pretextual, that showing, when coupled with the *prima facie* case, will usually be sufficient to survive summary judgment.

Turner, 476 F.3d at 345.

1. Bennett's Employment at Consolidated.

Bennett was hired on April 15, 1991 as a temporary Receptionist/Secretary. Within a few months, she was made permanent. In September 1997, her title was changed to Receptionist/Timekeeper. In 2003, the Secretary/Treasurer position became vacant. Although Bennett applied, Nancy Galofaro, a white female, was hired. In May 2005, Bennett complained about a need for a title change and a pay raise. Consolidated's administrator, Clyde Martin, replied that until her job performance improved, he could not recommend her for the title change and pay raise. Bennett met with the Personnel Committee, but it declined her request for a pay raise and title change. Her first EEOC charge is dated April 27, 2006. On June 30, 2006, she was promoted to General Office Clerk. Paula Dietz, a white female, was hired for the Receptionist/Timekeeper position. Rec. doc. 12 (Memorandum at 2-4).

2. Bennett's Evaluations.

Bennett received annual evaluations in June of each year. Some evaluations contain negative comments. There was improvement in some years. The evaluations may be summarized as follows:

| 2002 | Negative. | Bennett agreed. |
| 2003 | Improvement. | Bennett agreed. |
| 2004 | Negative and positive. | Bennett agreed. |

10

| | | |
|---|---|---|
| 2005 | Negative with a few positives. | Neither agreed nor disagreed. |
| 2006 | Negative. | Did not agree and responded. |
| 2007 | Positive with a few negatives. | Neither agreed nor disagreed. |
| 2008 | Positive with a few negatives. | Neither agreed nor disagreed. |
| 2009 | Negative. | Neither agreed nor disagreed. |
| 2010 | Negative. | Did not agree and responded. |
| 2011 | Positive. | Neither agreed nor disagreed. |
| 2012 | Negative with some positives. | Did not agree. |

Rec. doc. 12 (Memorandum at 7-11).

The evaluations show persistent problems. For example, she made excessive personal telephone calls. This was noted on the 2002 evaluation. There was no reference to personal calls in the 2003 evaluation. The evaluations for 2004, 2005, 2006, 2007, 2008, 2009 and 2010 all refer to excessive personal calls. While the 2011 evaluation contains no reference to personal calls, the June 28, 2012 evaluation refers to personal phone calls as a problem. The evaluations demonstrate other persistent problems including tardiness, excessive lunch breaks, and personal visitors. After a negative evaluation, there may be some improvement. In anticipation of the date of the evaluation, there may be some improvement as there were as in the month preceding the June 28, 2012 evaluation.

3. Bennett's Compensation.

Bennett received five percent annual raises until her salary was maxed out for her position. At this point the administrator, Martin could recommend up to a three percent increase based on evaluations. In July 2011, Bennett was given a five percent raise which maxed her out

11

at her position. On July 4, 2012, Bennett was given a two percent raise. Rec. doc. 12 (Exhibit B – Declaration of Clyde Martin)

4. <u>The March 26, 2012 Hand Sanitizer Incident</u>.

The following description is taken from Bennett's July 11, 2012 letter to the Personnel Committee:

> When I was up front filling in for the receptionist (Paula Dietz), I would lock my office door, but this day it was so quiet in the office until I didn't realize that the part-time R.O.W. man (Larry "Pete" Jones") was also here. I got up to go to put a cup in the garbage when the R.O.W. person startled me when I went to the break room to discard the cup. He was looking in the bottom of the cabinet, which I found to be somewhat unusual to me. I returned to the front, the secretary returned from lunch, not very pleasant at all. She seemed to be upset when I tried to talk to her. She treated me cold that morning. I got up to go to lunch, went into my office, when gathering my purse to leave to go to lunch, I reached for my cold water that I had earlier, in my cup on my desk. I took a swallow of water in my mouth, it started to burn my mouth, I swallow a little enough to make me feel nausea and stomach to hurt. I immediately spit it out, hurried and rinsed out my mouth, swallowed again and still tasted the annoying horrible taste when I swallowed. I was in shock, could not believe that someone actually came into my office and put something in my water. I looked around to see what it could have been. . . . I looked around my desk, immediately focused on the hand sanitizer that was next to my computer, I opened it, smelled it, smelled the cup of water again, it was clear and smelled the same.

Rec. doc. 12 (Exhibit A [Exhibit 49]).

5. <u>Analysis</u>.

> [T]he plaintiff must produce substantial evidence of pretext. <u>The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates</u>. A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence.

<u>Wallace v. Methodist Hosp. System</u>, 271 F.3d 212, 220 (5th Cir. 2001) (Citations, brackets and quotation marks omitted and emphasis added).

> We have held that in order for a plaintiff to show disparate treatment, she must demonstrate that the misconduct for which she was discharged was nearly

12

>identical to that engaged in by an employee not within her protected class whom the company retained.

Id. at 221 (Citations, brackets and quotation marks omitted).

Bennett does not present any evidence that Consolidated's employees outside of the protected class received evaluations reflecting conduct, for example excessive personal telephone calls, that was nearly identical to Bennett's conduct. If other employees had evaluations demonstrating persistent problems of the type described in Bennett's evaluations, such information was readily discoverable. The Court can only conclude that other employees did not have evaluations describing conduct similar to that found in Bennett's evaluations. Bennett has not produced substantial evidence of pretext. She has not demonstrated that Consolidated's decision to terminate her because of the documented history of tardiness, excessive personal telephone calls, excessive personal visitors and lack of initiative is unworthy of belief.

It is not necessary to consider the second reason (Bennett's alleged responsibility for the hand sanitizer incident) or the third reason (misleading the Personnel Committee on the purpose of the June 11, 2012 meeting).

## CONCLUSION

Bennett's Rule 15(b) request for leave to amend is denied. Consolidated's motion for summary judgment is granted as to: 1) the pre-July 6, 2012 incidents; 2) Bennett's retaliation claim; and 3) Bennett's Title VII discrimination claim.

IT IS ORDERED that: (1) Bennett's motion for leave to amend (Rec. doc. 15) is DENIED; and (2) Consolidated's motion for summary judgment (Rec. doc. 12) is GRANTED.

New Orleans, Louisiana, this 27th day of May, 2015.

**SALLY SHUSHAN**
**U.S. Magistrate Judge**